**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
MARIE A. MCCRARY (State Bar No. 262670)
HAYLEY REYNOLDS (State Bar No. 306427)
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 336-6545
Facsimile:  (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, PARSA MILLER, and LAUREN MORGAN as individuals, on behalf of themselves, the general public and those similarly situated,<br><br>    Plaintiffs,<br><br>       v.<br><br>NATURE'S PATH FOODS, INC.,<br><br>    Defendant. | CASE NO.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT**<br><br>**JURY TRIAL DEMANDED** |

-1-

Class Action Complaint

**INTRODUCTION**

1.       Plaintiffs Molly Brown, Parsa Miller, and Lauren Morgan, by and through their counsel, bring this class action against Defendant Nature's Path Foods, Inc. to seek redress for Defendant's deceptive practices in labeling and marketing its Nature's Path products.

2.       Consumers are increasingly health conscious and, as a result, many consumers seek foods high in protein. To capitalize on this trend, Defendant prominently labels its Nature's Path products as providing specific amounts of protein per serving depending on the product, such as "**10g PROTEIN**" on the label of its Hemp Hearts Granola. Consumers, in turn, reasonably expect that each product will provide the actual amount of protein per serving that the front of the product package claims it will.

3.       In truth, however, Defendant's products do not deliver the amount of protein that the labels claim. For example, Defendant labels its Hemp Hearts Granola as providing "10g PROTEIN," but amino acid content testing establishes that Defendant's Hemp Hearts Granola, at best, has 7.87 grams of protein.

4.       To compound the deception, below, in a small font that is barely legible to consumers, the Hemp Hearts Granola packaging provides that the "10g PROTEIN" is "per serving with milk."[1] The Nutrition Facts panel for the Hemp Hearts Granola includes the grams of protein for the product with milk, which is represented to be 10 grams of protein, and without milk, which is represented to be 6 grams of protein. Based on amino acid content testing, Defendant's products contain less protein than claimed, meaning, for example, rather than having 6 grams of protein per serving without milk, Defendant's Hemp Hearts Granola product actually has only 3.87 grams (i.e., an overstatement by approximately 57%). The Nutrition Facts panel also makes clear that the addition of milk introduces an extra 4 grams of protein. Because the Hemp Hearts Granola only has 3.87 grams of protein, Defendant's representation on the front of the Hemp Hearts Granola that the product has "10g PROTEIN" overstates the amount of protein the product, even factoring in the additional protein that comes with adding milk to it, which would

---

[1] Not all of Defendant's Products include, on the front label, an amount of protein that is inclusive of milk. Most of Defendant's Products, in fact, do not.

amount to a total of 7.87 grams of protein.

5.     Further, Defendant uses proteins of low biological value to humans in its products, such as oats. Accordingly, when the amino acid content is adjusted for protein digestibility (the "Protein Digestibility Corrected Amino Acid" score, or "PDCAAS"), Defendant's products provide even less protein per serving than amino acid content testing alone reveals. Oats typically have PDCAAS scores of between 0.5 and 0.6.

6.     Defendant's products are also misbranded. Parallel state and federal regulations require any product that makes a protein claim to include in the nutrition facts panel the percentage of the daily value of the protein in the product based on its amino acid content and PDCAAS. Defendant's products prominently make protein content claims but they fail to provide the required percent daily value of protein in the nutrition facts panel.

7.     Defendant's misrepresentations and misbranding caused Plaintiffs and members of the class to pay a price premium for the products.

## PARTIES

8.     Molly Brown is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Novato, California.

9.     Parsa Miller is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Loomis, California.

10.    Lauren Morgan is, and at all times alleged in this Class Action Complaint was, an individual and a resident of Huntington Beach, California.

11.    Molly Brown, Parsa Miller, and Lauren Morgan are collectively referred to hereafter as "Plaintiffs."

12.    Defendant Nature's Path Foods, Inc. ("Defendant") is a corporation existing under the laws of Canada with its principal place of business in Richmond, British Colombia, Canada, and is registered to do business in California.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of

interest and costs; and Plaintiffs and Defendant are citizens of different states.

14. The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continues to engage, in substantial and continuous business practices in the State of California.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

16. In accordance with California Civil Code Section 1780(d), Plaintiff Molly Brown concurrently files herewith a declaration establishing that, at various times throughout the class period, she purchased Nature's Path Hemp Hearts Granola, Gorilla Munch Cereal (23 oz), Pumpkin Seed + Flax Granola in grocery stores in Novato, Petaluma and San Rafael, California. (Plaintiff Molly Brown's declaration is attached hereto as Exhibit A.)

17. Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

18. Defendant manufactures, distributes, markets, advertises, and sells a variety of breakfast and snack products in the United States under the brand name "Nature's Path." Many of these products have packaging that predominately, uniformly, and consistently states on the principal display panel of the product labels that they contain and provide a certain amount of protein per serving. Plaintiffs have attached, as Exhibit B, a non-exhaustive list of the Nature's Path products that make protein claims on the front of the product packages. The products listed in Exhibit B, and any other Nature's Path brand product that claims a specific amount of protein on the front of its label, will hereinafter be referred to as the "Products."

19. The representation that the Products contain and provide a specific amount of protein per serving was uniformly communicated to Plaintiffs and every other person who purchased any of the Products in California and the United States. The same or substantially similar product

1    label has appeared on each Product during the entirety of the Class Period in the general form of

2    the following example:



18           20.     The nutrition facts panel on the side of the Products likewise repeats the protein

19    content claims, although the Products fail to provide any referenced percent daily value of its pro-

20    tein content as state and federal regulations require. The side panel of the Products has appeared

21    consistently throughout the Class Period in the general form of the following example (from the

22    Hemp Hearts Granola):

**Nutrition Facts**

About 6 servings per container
Serving size     3/4 cup cereal (55g)

|  |  | Per 3/4 cup cereal | Per 3/4 cup cereal with 1/2 cup skim milk |
|---|---|---|---|
| Calories |  | 260 | 300 |
|  |  | % DV* | % DV* |
| **Total Fat** |  | 10g  13% | 10g  13% |
| Saturated Fat |  | 1.5g  8% | 1.5g  8% |
| *Trans* Fat |  | 0g | 0g |
| Polyunsaturated Fat |  | 6g | 6g |
| Monounsaturated Fat |  | 2.5g | 2.5g |
| **Cholesterol** |  | 0mg  0% | 0mg  0% |
| **Sodium** |  | 45mg  2% | 95mg  4% |
| **Total Carb.** |  | 36g  13% | 42g  15% |
| Dietary Fiber |  | 5g  18% | 5g  18% |
| Total Sugars |  | 10g | 16g |

1

2

3

4

5

6

7       21.     As described in detail below, Defendant's advertising and labeling of the Products

8    as containing and providing specific amounts of protein per serving is false, misleading, and in-

9    tended to induce consumers to purchase the Products at a premium price, while ultimately failing

10   to meet consumer expectations. These representations deceive and mislead reasonable consumers

11   into believing that a serving of the Products will provide the grams of protein as represented on

12   the label, when in fact, protein content testing for the Nature's Path Hemp Hearts Granola, for

13   example, revealed that a serving contains only 3.87 grams of protein – an overstatement by ap-

14   proximately 57%. Even factoring in the addition of milk, which most of Defendant's Products do

15   not include on the front label panel, Defendant overstates that available protein per serving by

16   approximately 28%.) Further, when correcting for the digestibility (and therefore bio-usability) of

17   the protein through PDCAAS, the amount provided will be even less.

18

19

20

21

22

23

24

25

26

27

28

**Consumer Demand for Protein**

22.     Many American consumers are health conscious and seek wholesome, natural foods to keep a healthy diet, so they routinely rely upon nutrition information when selecting and purchasing food items. This is especially true in the community of athletes, registered dietitians, and coaches, to which Defendant markets. As noted by FDA Commissioner Margaret Hamburg during an October 2009 media briefing, "[s]tudies show that consumers trust and believe the nutrition facts information and that many consumers use it to help them build a healthy diet." Indeed, the FDA recommends relying on Nutrition Facts Labels as the primary tool to monitor the consumption of protein.[2]

23.     Protein is found throughout the body—in muscle, bone, skin, hair, and virtually every other body part or tissue. The health benefits of protein are well studied and wide ranging. Scientific studies have confirmed that protein can assist in weight loss, reduce blood pressure, reduce cholesterol, and control for risk factors for cardiovascular diseases. The National Academy of Medicine recommends that adults get a minimum of .8 grams of protein for every kilogram of body weight per day, or just over 7 grams for every 20 pounds of body weight.[3] For a 140-pound person, that means about 50 grams of protein each day. For a 200-pound person, that means about 70 grams of protein each day.

24.     Athletes and fitness enthusiasts typically consume much higher amounts of protein each day; typically between 1 to 1.5 grams of protein for every pound of body weight.

25.     The health benefits of protein are just as important, if not more important, for children. Children are in a relative state of constant growth and rely on protein as the building block of muscle, bone, skin, hair, and virtually every other body part or tissue. The National Academies of Science recommends the following amounts of daily intake of protein based on age group: 1-3

---

[2] FDA Protein Fact Sheet,
https://www.accessdata.fda.gov/scripts/InteractiveNutritionFactsLabel/factsheets/Protein.pdf
[3] National Academies of Medicine. *Dietary Reference Intakes for Energy, Carbohydrate, Fiber, Fat, Fatty Acids, Cholesterol, Protein, and Amino Acids (Macronutrients).*

years old: 13 g of protein per day; 4-8 years old: 19 g of protein per day; 9-13 years old: 34 g of protein per day.[4]

26.     Protein is not a monolithic substance, but instead proteins come in many varieties. Proteins are essentially chains of different amino acids, and different types of amino acids chained together in different ways will make different types of proteins. Further, the makeup of the protein that is ingested changes the function of the protein in the body, and certain types of proteins are more easily digested and used by humans than others.

27.     Typically, a "complete protein" is a protein that contains all nine essential amino acids. An essential amino acid is one that the human body cannot produce on its own and must be obtained through diet. Essential amino acids may be measured by the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"), which FDA regulations require for the calculation of Daily Reference Values ("DRV"). 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p.29, Question N. 22.

28.     The PDCAAS method requires the manufacturer to determine the amount of essential amino acids that the food contains and then multiply that number by humans' ability to digest the amino acid profile.

29.     Defendant uses plant-based proteins in its products. Because of the differences in benefits depending on the amino acid composition of a protein, the source of protein is important. Whey protein is animal-based and contains all nine essential amino acids. It has a high biological value and is fully digestible by humans. Thus, whey protein has a PDCAAS of 1.0. Plant protein contains higher levels of antioxidants, but rarely contains all nine essential amino acids.  Further, plant proteins such as oat proteins, which Defendant uses in its Products according to their ingredient lists, are not fully digested by humans. Oat proteins typically have a PDCAAS of .5-.6, meaning only 50-60% of the protein from those sources will be digested and available to humans.

---

[4] *Id.*

30.     By combining proteins with a 1.0 PDCAAS, such as whey, with lower quality proteins such as oats that typically have .5 or .6 PDCAAS, the overall PDCAAS for the combination will be far lower than 1.0.

31.     Accordingly, Defendant's use of low quality proteins, even in combination with some higher quality proteins, means that they actually provide far less protein to humans than its Product labels claim, or that amino acid content testing without correcting for digestibility shows.

**Federal and State Regulations Governing Food Labeling**

32.     The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "[a] statement of the corrected amount of protein per serving, as determined in paragraph (c)(7)(ii) of this section, calculated as a percentage of the RDI or DRV for protein, as appropriate, and expressed as a Percent of Daily Value . . . *shall be given if a protein claim is made for the product* . . ." 21 C.F.R. 101.9(c)(7)(i) (emphasis added).

33.     Although FDA guidance provides that a declaration of the DRV for protein is "not mandatory" in typical circumstances, that same guidance is equally clear that "[t]he percent of the DRV is required if a protein claim is made for the product."[5]

34.     Further, FDA regulations require the DRV to be calculated using amino acid analysis, more specifically the Protein Digestibility Corrected Amino Acid Score ("PDCAAS"). 21 C.F.R. § 101.9(c)(7)(ii); FDA Food Labeling Guide, p. 29, Question N.22. The PDCAAS method does not calculate protein content by nitrogen combustion, which is otherwise permitted under 21 C.F.R. § 101.9(c)(7) for products that do not make protein content claims.[6]

35.     Accordingly, when a product makes a protein content claim, FDA regulations require manufacturers to calculate the amount of amino acids that the food contains and then multiply that amount by humans' ability to digest the amino acid profile (the PDCAAS) to come up with a percent daily value.

---

[5] Guidance for Industry: A Food Labeling Guide ("FDA Food Labeling Guide") p. 29, Question N22, U.S. Food & Drug Administration, https://www.fda.gov/media/81606/download (last accessed February 18, 2020).
[6] Specifically, the regulation states that the grams of protein figure in the nutrition fact box "may be calculated on the basis of the factor of 6.25 times the nitrogen content of the food."

36.     FDA regulations also allow for a separate "as prepared" column in the Nutrition Facts panel for food "commonly combined with other ingredients" but the "type and quantity of the other ingredients to be added to the product" and "the specific method of cooking or other preparation" must be "specified prominently on the label." 21 C.F.R. 101.9(h)(4). Should a manu-facturer opt to include an "as prepared" column in the Nutrition Facts panel, it must also include the DRV in both the "as prepared" and "as purchased" columns. 21 C.F.R. 101.9(e)(3).

37.     Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. §§ 101, 102, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursu-ant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed below are applicable nationwide to all sales of packaged food products. Additionally, no state imposes dif-ferent requirements on the labeling of packaged food for sale in the United States.

38.     Under the FDCA, the term false has its usual meaning of "untruthful," while the term misleading is a term of art that covers labels that are technically true, but are likely to de-ceive consumers. Under the FDCA, if any single representation on the labeling is false or mis-leading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

39.     Further in addition to its blanket adoption of federal labeling requirements, Cali-fornia has also enacted a number of laws and regulations that adopt and incorporate specific enu-merated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is false and misleading); and California Health & Safety Code § 110705 (misbranded if words, statements and other information required by the Sherman Law are either missing or not sufficiently conspicuous).

-9-

Class Action Complaint

40.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

41.     Representing that the Products contain a certain amount of protein per serving, as Defendant's labels do, is a statement of fact, and use of these phrases on the labels of packaged food is limited by the aforementioned misbranding laws and regulations.

**Defendant's Marketing and Labeling of its Products Violates State and Federal Food Labeling Laws**

42.     Defendant's Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products' labels state that each Product contains and provides a specific amount of protein per serving—such as "10g PROTEIN" for the Hemp Hearts Granola—when, in fact, amino acid content testing reveals that the Products contain less – such as 3.87 grams of protein for the Hemp Hearts Granola, which even after adding an extra 4 grams of protein for milk, overstates the protein by approximately 28%.

43.     Further, Defendant makes protein content claims on the front of its Product packages and yet has left the Percent Daily Value column of its nutrition facts (for both the "as prepared" and "as purchased" columns) for protein completely blank. Because Defendant made a protein content claim, it was statutorily obligated to calculate the protein content of its Products via the amino analysis described above and to provide a percent daily value figure in the Nutrition Facts panel using the PDCAAS method described above. Defendant has failed to do so, and these Products are accordingly misbranded.

44.     Defendant also violated 21 C.F.R. § 101.9(h)(4) because it failed to *prominently* display "the type and quantity of the other ingredients to be added to the product by the user and the specific method of cooking and other preparation" on the front the label. For instance, the Hemp Hearts Granola states "10g PROTEIN" on the front of the package and below, in very small, barely legible font, states that it is "per serving with milk" and below that, in even smaller font, states "prepared with a ½ cup of skim milk." This is language is not prominently featured on the label and, therefore, violates 21 C.F.R. § 101.9(h)(4).

45.     Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

    a.   Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

    b.   Section 110395, which makes it unlawful to manufacture, sell, deliver, hold or offer to sell any falsely or misleadingly advertised food; and

    c.   Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

46.     Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

    d.   Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

    e.   Section 110705 (a food is misbranded if words, statements and other information required by the Sherman Law to appear food labeling is either missing or not sufficiently conspicuous);

    f.   Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

    g.   Section 110765, which makes it unlawful for any person to misbrand any food; and

    h.   Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

47.     Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. § 101.9 (c)(7), 21 C.F.R. § 101.9 (h)(4), and 21

C.F.R. 101.9(e)(3), which have been incorporated by reference in the Sherman Law, by failing to include and/or prominently display on the Product labels the nutritional information required by law.

48.     A reasonable consumer would expect that the Products contain and provide what Defendant identifies them to contain and provide on the product labels and that the labels would not be contrary to the policies or regulations of the State of California and/or the FDA. For example, a reasonable consumer would expect that when Defendant labels its Products as containing "10g PROTEIN" per serving, the Products would provide 10 grams of protein per serving. However, based on amino acid content testing, Defendant's Products contain less protein than claimed. For example, the Hemp Hearts Granola only contained 3.87 grams of protein – an overstatement of approximately 57%, and 28% even if accounting for an extra 4 grams of protein with added milk.

49.     Moreover, based on the types of protein stated in the Products' ingredient lists, the amount of digestible or usable protein the Products actually deliver to the human body is even lower than the amino content testing itself reveals. Defendant uses poor quality proteins, such as oat proteins, in the Products, which will result in each Product's overall PDCAAS being far less than 1.0.

50.     Consumers lack the meaningful ability to test or independently ascertain the truth-fulness of Defendant's food labeling claims, especially at the point of sale. Consumers would not know the true protein content of the Products merely by looking elsewhere on the product package. Its discovery requires investigation well beyond the grocery store aisle and knowledge of food chemistry beyond that of the average consumer. An average consumer does not have the specialized knowledge necessary to ascertain that a serving of a Product does not contain the number of grams of protein that is represented on the label. An average consumer also lacks the specialized knowledge necessary to determine the PDCAAS for the Products. That combined with Defendant's active concealment in representing that the Products contain and provide spe-cific amounts of protein per serving, and not disclosing otherwise anywhere on the label, much less by listing the Protein DRV for the Products as it is required to do, gave the average reason-

able consumer no reason to suspect that Defendant's representations on the packages were false. Therefore, consumers had no reason to investigate whether the Products actually do contain and provide the amount of protein per serving that the labels claim they do. Thus, reasonable consumers relied on Defendant's representations regarding the nature of the Products.

51.     Defendant intends and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done with the claims on the Products that they contain and provide specific amounts of protein per serving.

**Defendant Misleadingly Markets Its Products to Increase Profits and Gain a Competitive Edge**

52.     In making false, misleading, and deceptive representations, Defendant distinguishes its Products from its competitors' products. Defendant knew and intended that consumers would purchase, and pay a premium for, products labeled as having more protein over comparable products that do not contain misleading protein representations on the product labels. By using this branding and marketing strategy, Defendant is stating that its Products are superior to, better than, and more nutritious and healthful than other products that do not misrepresent the number of grams of protein on their labels or fail to prominently display the "as prepared" language on the front of the label.

**Defendant Intends to Continue to Market its Products as Containing More Protein than the Products Actually Contain**

53.     Because consumers pay a price premium for products that contain more protein, by labeling its Products as containing more grams of protein per serving than they actually contain, Defendant is able to both increase its sales and retain more profits.

54.     Defendant engaged in the practices complained of herein to further its private interests of: (i) increasing sales of its Products while decreasing the sales of competitors that do not misrepresent the number of grams of protein contained in its products, and/or (ii) commanding a higher price for its Products because consumers will pay more for these Products due to consumers' demand for products containing more protein.

Class Action Complaint

55.     The market for protein products is continuing to grow and expand, and because Defendant knows consumers rely on representations about the number of grams of protein in food products, Defendant has an incentive to continue to make such false representations. In addition, other trends suggest that Defendant has no incentive to change its labeling practices.

56.     For example, one market analysis revealed that between 2013-2017, product launches with a protein claim grew 31%.[7]

57.     To capitalize on the growing market, Defendant has since expanded its product line to oatmeal, waffles, granola and other snacks and has continued to replicate its misrepresentations on the new product lines. Defendant continues to launch new product lines and flavors to diversify its portfolio to maintain its competitive edge, making it likely that Defendant will continue to misleadingly advertise its Products and perpetuate the misrepresentations regarding the protein in its Products.

## PLAINTIFFS' EXPERIENCES

**Plaintiff Molly Brown**

58.     Plaintiff Molly Brown has purchased Nature's Path Hemp Hearts Granola, Pumpkin Seed + Flax Granola, and Gorilla Munch Cereal (23 oz) from various Whole Foods and Sprouts stores throughout the Bay Area, including Novato, Petaluma and San Rafael, California, on multiple occasions during the last four years.

59.     Ms. Brown made each of her purchases after reading and relying on the truthfulness of Defendant's product label that promised the Products contained a specified amount of protein per serving on the front of the product package (such as "10g PROTEIN" for the Hemp Hearts Granola). But on each of the Products she purchased, Defendant misrepresented the protein content of the Products as containing more grams of protein than they actually contain, and as far more than they actually provide, when adjusted by the PDCAAS and even including the addition of milk for some of the Products.

---

[7] https://www.bakeryandsnacks.com/Article/2018/11/26/10-key-snack-trends-to-watch?utm_source=copyright&utm_medium=OnSite&utm_campaign=copyright

60.     At the time of each of her purchases of the Products, Ms. Brown did not know that the Products did not contain or provide the amount of protein represented on the label. As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to Ms. Brown.

61.     Ms. Brown not only purchased the Products because the labels said that they con-tained a specified amount of protein per serving, but she also paid more money for the Products than she would have paid for other or a similar product that was not mislabeled regarding the number of grams of protein it contained or displayed the "as prepared" language prominently.

62.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Ms. Brown would not have purchased them or, at a very minimum, she would have paid less for the Products.

63.     Ms. Brown continues to desire to purchase protein products, including those mar-keted and sold by Defendant. If the Products were reformulated to provide the grams of protein that are represented on the labels, Ms. Brown would likely purchase them again in the future. Ms. Brown regularly visits stores where Defendant's Products and other protein products are sold. Because Ms. Brown does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label, Ms. Brown will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction that prohibits Defendant from labeling its products with the incorrect number of grams of protein that each serving contains. Should Defendant begin to market and sell a new line of products, Ms. Brown could be at risk for buying another one of Defendant's products in reli-ance on the same or similar misrepresentation.

**Plaintiff Parsa Miller**

64.     Plaintiff Parsa Miller has purchased Nature's Path Hemp Hearts Granola, Gorilla Munch Cereal (23 oz), Love Crunch Cereal (Chocolate & Peanut Butter), Heritage Flakes Cereal, Flax Plus Multibran Flakes Cereal, Flax Plus Maple Pecan Crunch Cereal, Flax Plus Pumpkin Raisin Crunch Cereal, Flax Plus Red Berry Crunch Cereal, Coconut Chia Granola, Pumpkin + Flax Seed Granola, Apple Cinnamon Oatmeal, Blueberry Cinnamon Flax Oatmeal, Old

Fashioned Oats, Flax Plus Waffles, Maple Cinnamon Waffles, and Ancient Grains Waffles from various grocery stores, including Safeway stores, throughout the Loomis, California area during the last four years.

65.     Mr. Miller made each of his purchases after reading and relying on the truthfulness of Defendant's product label that promised the Products contained a specified amount of protein per serving on the front of the product package (such as "10g PROTEIN" per serving for the Hemp Hearts Granola). But on each of the Products he purchased, Defendant misrepresented the protein contents of the Products as containing more grams of protein than they actually contain, and as far more than they actually provide, when adjusted by the PDCAAS and even including the addition of milk for some of the Products.

66.     At the time of each of his purchases of the Products, Mr. Miller did not know that the Products did not contain or provide the amount of protein represented on the label. As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to him.

67.     Mr. Miller not only purchased the Products because the labels said that they contained a specified amount of protein per serving, but he also paid more money for the Products than he would have paid for other or a similar product that was not mislabeled regarding the number of grams of protein it contained or displayed the "as prepared" language prominently.

68.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Mr. Miller would not have purchased them or, at a very minimum, he would have paid less for the Products.

69.     Mr. Miller continues to desire to purchase protein products, including those marketed and sold by Defendant. If the Products were reformulated to provide the grams of protein that are represented on the labels, Mr. Miller would likely purchase them again in the future. Mr. Miller regularly visits stores where Defendant's Products and other protein products are sold. Because Mr. Miller does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label, Mr. Miller will be unable to rely on Defendant's labels when shopping for protein products in the

future absent an injunction that prohibits Defendant from labeling its products with the incorrect number of grams of protein that each serving contains. Should Defendant begin to market and sell a new line of products, Mr. Miller could be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation.

**Plaintiff Lauren Morgan**

70.     Plaintiff Lauren Morgan has purchased Nature's Path Hemp Hearts Granola, Apple Cinnamon Oatmeal, and Pumpkin + Flax Seed Granola from Walmart and/or Target retail stores throughout the Huntington Beach, California area during the last three years.

71.     Ms. Morgan made each of her purchases after reading and relying on the truthfulness of Defendant's product label that promised the Products contained a specified amount of protein per serving on the front of the product package (such as "10g PROTEIN" per serving for the Hemp Hearts Granola). But on each of the Products she purchased, Defendant misrepresented the protein contents of the Products as containing more grams of protein than they actually contain, and as far more than they actually provide, when adjusted by the PDCAAS, and even including the addition of milk for some of the Products.

72.     At the time of each of her purchases of the Products, Ms. Morgan did not know that the Products did not contain or provide the amount of protein represented on the label. As a result of Defendant's misrepresentations and omissions, the Products have no, or, at a minimum, a much lower value to her.

73.     Ms. Morgan not only purchased the Products because the labels said that they contained a specified amount of protein per serving, but she also paid more money for the Products than she would have paid for other or a similar product that was not mislabeled regarding the number of grams of protein it contained or displayed the "as prepared" language prominently.

74.     Had Defendant not misrepresented (by omission and commission) the true nature of the Products, Ms. Morgan would not have purchased them or, at a very minimum, she would have paid less for the Products.

75.     Ms. Morgan continues to desire to purchase protein products, including those

marketed and sold by Defendant. If the Products were reformulated to provide the grams of protein that are represented on the labels, Ms. Morgan would likely purchase them again in the future. Ms. Morgan regularly visits stores where Defendant's Products and other protein products are sold. Because Ms. Morgan does not know the formula for Defendant's products and cannot test whether or not the Products provide the amount of protein that is represented on the label, Ms. Morgan will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction that prohibits Defendant from labeling its products with the incorrect number of grams of protein that each serving contains. Should Defendant begin to market and sell a new line of products, Ms. Morgan could be at risk for buying another one of Defendant's products in reliance on the same or similar misrepresentation.

76.     Plaintiffs and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is untrue and/or misleading under California law and the products are misbranded; therefore, the Products are worth less than what Plaintiffs and members of the Class paid for them and/or Plaintiffs and members of the Class did not receive what they reasonably intended to receive.

## CLASS ALLEGATIONS

77.     Plaintiffs bring this class action lawsuit on behalf of themselves and proposed classes of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiffs seek to represent the following groups of similarly situated persons, defined as follows:

> The Class:  All persons in the State of California who purchased the Products between July 2, 2017 and the present.

> The Subclass: All Class Members who purchased Products that make protein claims on the front of the package based on "as prepared" nutrition information.

78.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

79.     Numerosity: Plaintiffs do not know the exact size the Class and Subclass, but they estimate that it is composed of more than 100 persons. The persons in the Class and Subclass are

so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

80.     **Common Questions Predominate:** This action involves common questions of law and fact to the potential classes because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led consumers to believe that the Products contained the amount of protein as represented on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class and Subclass to recover. The questions of law and fact common to the Class and Subclass are:

   a.   The true nature of the protein content in the Products;

   b.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful because of misrepresentations;

   c.   Whether Defendant's actions violate Federal and California laws invoked herein;

   d.   Whether labeling the Products as containing more grams of protein than they actually contain causes the Products to command a price premium in the market as compared with similar products that do not make such misrepresentations;

   e.   Whether Defendant's advertising and marketing regarding the Products sold to the Class and Subclass members was likely to deceive reasonable consumers;

   f.   Whether representations regarding the number of grams of protein in the Products are material to a reasonable consumer;

   g.   Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

   h.   The amount of profits and revenues earned by Defendant as a result of the conduct;

   i.   Whether Class and Subclass members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

   j.   Whether Class and Subclass members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so,

what is the nature of such relief.

81.     Typicality: Plaintiffs' claims are typical of the claims of the other members of the Class and Subclass because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class and Subclass were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

82.     Adequacy of Representation: Plaintiffs will fairly and adequately protect the interests of all Class and Subclass members because it is in their best interests to prosecute the claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic to, the interests of Class and Subclass members. Plaintiffs have retained highly competent and experienced class action attorneys to represent their interests and that of the Class and Subclass. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all Class and Subclass members. Plaintiffs and their counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of their fiduciary responsibilities to the Class and Subclass members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for Class and Subclass members.

83.     Superiority: There is no plain, speedy, or adequate remedy other than by maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of Class and Subclass members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the classes to redress the wrongs

1    done to them, while an important public interest will be served by addressing the matter as a class

2    action.

3         84.    Plaintiffs are unaware of any difficulties that are likely to be encountered in the

4    management of this action that would preclude its maintenance as a class action.

5                                    **CAUSES OF ACTION**

6         Plaintiffs do not plead, and hereby disclaim, causes of action under the FDCA and

7    regulations promulgated thereunder by the FDA. Plaintiffs rely on the FDCA and FDA

8    regulations only to the extent such laws and regulations have been separately enacted as state law

9    or regulation or provide a predicate basis of liability under the state and common laws cited in the

10   following causes of action.

11

12                         **PLAINTIFFS' FIRST CAUSE OF ACTION**
     **(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code §
13                              1750, *et seq.*)**
                   **On Behalf of Plaintiffs, the Class, and the Subclass**

14        85.    Plaintiffs reallege and incorporate the paragraphs of this Class Action Complaint

15   as if set forth herein.

16        86.    Defendant's actions, representations and conduct have violated, and continue to

17   violate the CLRA, because they extend to transactions that are intended to result, or which have

18   resulted, in the sale or lease of goods or services to consumers.

19        87.    Plaintiffs and other Class and Subclass members are "consumers" as that term is

20   defined by the CLRA in California Civil Code § 1761(d).

21        88.    The Products that Plaintiffs (and other similarly situated Class and Subclass

22   members) purchased from Defendant were "goods" within the meaning of California Civil Code

23   § 1761(a).

24        89.    Defendant's acts and practices, set forth in this Class Action Complaint, led

25   customers to falsely believe that the Products contained and provided the amount of protein

26   claimed on the product package. By engaging in the actions, representations and conduct set forth

27   in this Class Action Complaint, Defendant has violated, and continue to violate, § 1770(a)(2), §

28   1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California

Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code §1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Finally, regarding California Civil Code §1770(a)(8), Defendant falsely or deceptively markets and advertises that, unlike other protein product manufacturers, it sells Products that contain more grams of protein than the Products actually contain. Further, Defendant failed to list the DRV of protein on its Products, as it was required to do.

90.     Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class and Subclass will continue to suffer harm. Plaintiffs and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

91.     Plaintiffs provided Defendant with notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, it failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiffs seek, pursuant to California Civil Code § 1780(a)(3), on behalf of themselves and those similarly situated Class and Subclass members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices.

92.     Plaintiffs also request that this Court award their costs and reasonable attorneys'
fees pursuant to California Civil Code § 1780(d).

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Plaintiffs, the Class, and the Subclass**

93.     Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action
Complaint as if set forth herein.

94.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years
preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive
and/or misleading statements in connection with the advertising and marketing of the Products.

95.     Defendant made representations and statements (by omission and commission)
that led reasonable customers to believe that the Products that they were purchasing contained
more grams of protein per serving than the Products actually contained or provided. Further,
Defendant failed to list the DRV of protein on its Products, as it was required to do.

96.     Plaintiffs and those similarly situated relied to their detriment on Defendant's
false, misleading and deceptive advertising and marketing practices, including each of the
misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been
adequately informed and not intentionally deceived by Defendant, they would have acted
differently by, without limitation, refraining from purchasing Defendant's Products or paying less
for them.

97.     Defendant's acts and omissions are likely to deceive the general public.

98.     Defendant engaged in these false, misleading and deceptive advertising and
marketing practices to increase its profits. Accordingly, Defendant has engaged in false
advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and
Professions Code.

99.     The aforementioned practices, which Defendant used, and continues to use, to its
significant financial gain, also constitute unlawful competition and provide an unlawful
advantage over Defendant's competitors as well as injury to the general public.

100.     As a direct and proximate result of such actions, Plaintiffs and the other Class and

Subclass members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

101.    Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the false, misleading and deceptive advertising and marketing practices complained of herein, plus interest thereon. Plaintiffs and those similarly situated lack any adequate remedy at law to obtain this restitution.

102.    Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

103.    Plaintiffs seek, on behalf of themselves and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFFS' THIRD CAUSE OF ACTION**
**(Common Law Fraud, Deceit and/or Misrepresentation)**
**On Behalf of Plaintiffs, the Class, and the Subclass**

104.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

105.    Defendant has fraudulently and deceptively informed Plaintiffs that the Products contain more grams of protein than they actually contain or provide. Further, Defendant failed to

list the DRV of protein on all its Products, as it was required to do. Also, as to some of the Products, Defendant failed to display "the type and quantity of the other ingredients to be added to the product by the user and the specific method of cooking and other preparation" prominently on the front the label, as it was required to do.

106.    These misrepresentations and omissions were known exclusively to, and actively concealed by, Defendant, not reasonably known to Plaintiff, and material at the time they were made. Defendant knew or should have known the composition of the Products, and knew or should have known that the Products did not contain or provide the amount of protein represented on the label. Defendant's misrepresentations and omissions concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase Defendant's Products. In misleading Plaintiffs and not so informing Plaintiffs, Defendant breached its duty to them. Defendant also gained financially from, and as a result of, its breach.

107.    Plaintiffs and those similarly situated relied to their detriment on Defendant's misrepresentations and fraudulent omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the Products.

108.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs and those similarly situated to, without limitation, purchase the Products.

109.    Plaintiffs and those similarly situated justifiably and reasonably relied on Defendant's misrepresentations and omissions, and, accordingly, were damaged by Defendant.

110.    As a direct and proximate result of Defendant's misrepresentations and/or omissions, Plaintiffs and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

111.    Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss

and harm to Plaintiffs and those similarly situated.

**PLAINTIFFS' FOURTH CAUSE OF ACTION**
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiffs, the Class, and the Subclass**

112.    Plaintiffs reallege and incorporate by reference the paragraphs of this Class Action Complaint as if set forth herein.

113.    Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continue to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the unlawful, unfair, and fraudulent business practices outlined in this complaint.

114.    In particular, Defendant has engaged, and continue to engage, in unlawful practices by, without limitation, violating the following state and federal laws: (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§ 110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law (Article 6), including without limitation, California Health & Safety Code §§ 110660, 110665, 110705, 110760, 110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in 21 U.S.C. § 343(a), *et seq.* and FDA regulations, including but not limited to 21 C.F.R. 21 C.F.R. § 101.9 (c)(7), 101.9(h)(4), and 101.9(e)(3), which are incorporated into the Sherman Law (California Health & Safety Code §§ 110100(a), 110380, and 110505).

115.    In particular, Defendant has engaged, and continues to engage, in unfair and fraudulent practices by, without limitation, the following: (i) misrepresenting that the Products contain and provide more grams of protein than they actually contain or provide; and (ii) failing to list the Protein DRV as required by FDA regulations; and (iii) failing to prominently display the type and quantity of the ingredients to be added to the product by the user and the specific method of cooking on the front the label.

116.    Plaintiffs and those similarly situated relied to their detriment on Defendant's unlawful, unfair, and fraudulent business practices. Had Plaintiffs and those similarly situated

been adequately informed and not deceived by Defendant, they would have acted differently by, without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or (iii) paying less for the Products.

117.   Defendant's acts and omissions are likely to deceive the general public.

118.   Defendant engaged in these deceptive and unlawful practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

119.   The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

120.   As a direct and proximate result of such actions, Plaintiffs and the other Class and Subclass members, have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.  Among other things, Plaintiffs, Class members, and the Subclass members lost the amount they paid for the Products.

121.   As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

122.   Plaintiffs seek, on behalf of themselves and those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the deceptive and/or unlawful trade practices complained of herein, plus interest thereon. Plaintiffs and those similarly situated lack any adequate remedy at law to obtain this restitution.

123.   Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

124.   Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained

of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFFS' FIFTH CAUSE OF ACTION
### (Unjust Enrichment)
### On Behalf of Plaintiffs, the Class, and the Subclass

125.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein

126.    Plaintiffs and members of the Class and the Subclass conferred a benefit on the Defendant by purchasing the Products

127.    Defendant has been unjustly enriched in retaining the revenues from Plaintiffs' and Class and Subclass members' purchases of the Products, which retention is unjust and inequitable, because Defendant falsely represented that the Products contained and provided specific amounts of protein per serving, when, in fact, the Products contained less protein than represented, and provided even less. This harmed Plaintiff, Class members, and Subclass members because they paid a price premium as a result.

128.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class and Subclass members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class and Subclass members for its unjust enrichment, as ordered by the Court. Plaintiffs and those similarly situated have no adequate remedy at law to obtain this restitution.

129.     Plaintiffs, therefore, seeks an order requiring Defendant to make restitution to them and other members of the Class and Subclass.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, on behalf of themselves and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.   Certification of the proposed Class and Subclass, including appointment of Plaintiffs' counsel as class counsel;

B.   An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.   An award of compensatory damages in an amount to be determined at trial, except for those causes of action where compensatory damages are not legally available;

D.   An award of statutory damages in an amount to be determined at trial, except for those causes of action where statutory damages are not legally available;

E.   An award of punitive damages in an amount to be determined at trial, except for those causes of action where punitive damages are not legally available;

F.   An award of treble damages, except for those causes of action where treble damages are not legally available;

G.   An award of restitution in an amount to be determined at trial;

H.   An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.   For reasonable attorneys' fees and the costs of suit incurred; and

J.   For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: July 2, 2021

                                    **GUTRIDE SAFIER LLP**

                                    /s/Seth A. Safier/s/
                                    _____
                                    Seth A. Safier, Esq.
                                    Marie McCrary, Esq.
                                    Hayley Reynolds, Esq.
                                    100 Pine Street, Suite 1250
                                    San Francisco, CA 94111

## EXHIBIT A

I, Molly Brown, declare:

1.      I am a plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      As set forth in my complaint, I purchased the Nature's Path Hemp Hearts Granola, Pumpkin Seed + Flax Granola, and Gorilla Munch Cereal (23 oz) from various Whole Foods and Sprouts stores throughout the Bay Area, including Novato, Petaluma and San Rafael, California, during the Class Period.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 24th day of June 2021, in Novato, California.



Molly Brown

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

| Product Type | Variety | Protein Claim on the Front Label |
|---|---|---|
| Cereal | | |
| Envirokids | Chocolate Koala Crisp (25.6 oz) | 3g |
| Envirokids | Gorilla Munch Corn Puffs (23 oz) | 3g |
| Envirokids | Peanut Butter Panda Puffs (24.7 oz) | 3g |
| Envirokids | Strawberry Chocolate Turtle Splash | 4g |
| Flax Plus | Maple Pecan Crunch | 6g |
| Flax Plus | Multibran Flakes | 5g |
| Flax Plus | Pumpkin Raisin Crunch | 6g |
| Flax Plus | Raisin Bran | 6g |
| Flax Plus | Red Berry Crunch | 6g |
| Heritage | Original Crunch | 6g |
| Heritage | Original Flakes (13.25 oz) | 5g |
| Heritage | Original Flakes (32 oz) | 5g |
| Heritage | Original O's (32 oz) | 4g |
| Love Crunch | Dark Chocolate and Peanut Butter | 8g |
| Mesa Sunrise | Original (10.6 oz) | 4g |
| Multigrain | Oat Bran Flakes (32 oz) | 3g |
| Optimum Power | Blueberry Cinnamon Flax | 9g |
| Qi'a | Cocoa Coconut Superflakes | 6g |
| Qi'a | Cranberry Vanilla Chia, Buckwheat & Hemp | 6g |
| Qi'a | Original Chia, Buckwheat & Hemp | 6g |
| Smart Bran | Original | 4g |
| Granola | | |
| Granola | Hemp Hearts | 10g per serving with milk |
| Granola | Pumpkin Seed + Flax | 10g per serving with milk |
| Granola | Coconut Chia | 9g per serving with milk |
| Granola | Vanilla Almond & Flax | 10g per serving with milk |
| Grain Free Granola | Caramel Pecan | 6g |
| Grain Free Granola | Maple Almond | 6g |
| Grain Free Granola | Vanilla Poppy Seed | 6g |

| Product Type | Variety | Protein Claim on the Front Label |
|---|---|---|
| **Oatmeal** | | |
| Coarsely Cut Whole Grain Oats | Steel Cut | 5g |
| Gluten Free | Steel Cut | 5g |
| Gluten Free Oatmeal | Brown Sugar Maple | 4g |
| Gluten Free Oatmeal | Homestyle | 6g |
| Gluten Free Whole Grain Rolled Oats | Old Fashioned | 5g |
| Grain Free Hot Cereal | Cinnamon Apple Crisp | 9g |
| Grain Free Hot Cereal | Maple Almond Crunch | 9g |
| Instant Oatmeal | Apple Cinnamon | 5g |
| Instant Oatmeal | Blueberry Cinnamon Flax | 5g |
| Instant Oatmeal | Flax Plus | 6g |
| Instant Oatmeal | Maple Nut | 5g |
| Instant Oatmeal | Spiced Apple + Flax | 4g |
| Oatmeal Cup | Coconut Cashew | 7g |
| Oatmeal Cup | Maple Pecan | 7g |
| Oatmeal Cup | Summer Berries Boost | 7g |
| Old Fashioned Oats | Old Fashioned | 5g |
| Quick Cook | Instant Oats | 5g |
| Quick Cook | Steel Cut | 5g |
| **Waffles** | | |
| Envirokids | Cinnamon Penguin Party | 5g |
| Envirokids | Pink Blueberry Polar Beary | 5g |
| Nature's Path Organic | Flax Plus | 4g |
| Nature's Path Organic | Maple Cinnamon | 4g |
| Nature's Path Organic | Ancient Grains | 4g |