UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATURES PATH FOODS, INC.,<br><br>    Defendant. | Case No. 21-cv-05132-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

This putative class action lawsuit alleges that Defendant Nature's Path Foods, Inc.'s ("Nature's Path") breakfast and snack products falsely advertise the amount of protein they contain. *See* Dkt. No. 1 ("Compl."). Pending before the Court is Nature's Path's Motion to Dismiss, for which briefing is complete. *See* Dkt. Nos. 18 ("Mot."), 23 ("Opp."), and 26 ("Reply").[1] For the reasons provided below, the Court **GRANTS IN PART and DENIES IN PART** the motion.

**I.   BACKGROUND**

Plaintiffs Molly Brown, Parsa Miller, and Lauren Morgan are consumers in California who allege that they were deceived into buying Nature's Path's breakfast and snack products (the "Products") based on the statements Nature's Path makes on its packaging about the amount of protein in those products. Compl. ¶¶ 1-7, 58-76. Through the regulations summarized below, the Food and Drug Administration (FDA) extensively regulates what manufacturers may lawfully say about the protein in their products.

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

### A. Regulatory Background

In 21 C.F.R. § 101.9, the FDA regulates what a manufacturer can (and sometimes, must) say in the nutrition facts label—the box on the back or side of the packaging that lists the amounts of relevant nutrients. When it comes to protein, the nutrition facts label must include "the number of grams of protein in a serving, expressed to the nearest gram." *Id.* § 101.9(c)(7).

For this purpose, manufacturers "may" calculate the amount of protein in their product by multiplying the product's nitrogen content by a factor of 6.25. *See id.* ("Protein content may be calculated on the basis of the factor 6.25 times the nitrogen content of the food . . . ."); *see also Nacarino v. Kashi Co.*, No. 21-CV-07036-VC, 2022 WL 390815, at *1 (N.D. Cal. Feb. 9, 2022) ("The more protein that a product has, the more nitrogen there will be. Thus, the amount of protein in a product can be estimated by multiplying its nitrogen content by some factor (6.25, as it turns out)."). The parties refer to this manner of calculating protein quantity as "the nitrogen method." *See, e.g.*, Mot. at 7; Opp. at 4. To summarize, FDA regulations require the protein content per serving of a product to be stated in grams in the nutrition facts label, and for that purpose, protein content may be calculated by the nitrogen method.

If the packaging contains additional statements about protein outside the nutrition facts label, then the manufacturer must amend the label to add more information. The additional statement is called a "nutrient content" claim. *See* 21 C.F.R. § 101.13(c) ("Information that is required or permitted . . . to be declared in nutrition labeling . . . is not a nutrient content claim . . . . If such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims."). Here, for instance, there is no dispute that the Products make "nutrient content claims" because they promote protein content on the front of their packages, outside the confines of the nutrition facts panels. When a product makes a protein content claim, the manufacturer must amend the nutrition facts label to include a "statement of the corrected amount of protein per serving," expressed as a "Percent of Daily Value." 21 C.F.R. § 101.9(c)(7)(i). This figure takes the "actual amount of protein" from the nutrition label and adjusts it for digestibility based on the product's "protein digestibility-corrected amino acid score," or "PDCAAS." *Id.* § 101.9(c)(7)(ii).i).

2

1    Significantly, FDA regulations do not specify how manufacturers must calculate the
2    amount of protein in the protein content claim itself.  The relevant regulation broadly provides that
3    nutrient content claims, such as front label protein statements, cannot "implicitly characterize the
4    level of the nutrient in the food" and cannot be "false or misleading in any respect."  21 C.F.R. §
5    101.13(i)(3).  The latter requirement tracks the Food, Drug, and Cosmetic Act ("FDCA"), which
6    provides that a food label is unlawfully misbranded if it is "false or misleading in any particular."
7    21 U.S.C. § 343(a).

### B.    Factual Background

Plaintiffs challenge three aspects of the Products' labeling.  They first bring a "front label" claim, which challenges the protein content claims on the front of Nature's Path's packages.[2] Plaintiffs allege that the front labels on the Products prominently advertise a specific amount of protein per serving when, in fact, "amino acid content testing" reveals that they contain less.  *Id.* ¶¶ 20, 42.  Plaintiffs also allege that Nature's Path uses poor quality proteins in the Products, which lowers the amount of digestible or usable protein that the Products deliver to the human body.  *Id.* ¶ 49.

Plaintiffs next bring a "side label" claim, which alleges that the nutrition facts labels on the side of the Products are misleading because they fail to include the "percent daily value" figure that FDA regulations require.  *Id.* ¶ 20.  And third, Plaintiffs allege that the Products fail to prominently display "the type and quantity of the other ingredients to be added to the product by the user and the specific method of cooking and other preparation" on the front the label, as required by 21 C.F.R. § 101.9(h)(4).  *Id.* ¶ 44.  As an example, Plaintiffs allege that Nature's Path's Hemp Hearts Granola product states "10g PROTEIN" on the front of the package and below, "in very small, barely legible font," states that the protein content claim is "per serving with milk" and below that, in even smaller font, states "prepared with a ½ cup of skim milk."  *Id.*[3]

---

[2] Plaintiffs identify 51 Nature's Path breakfast and snack products that make front label protein content claims.  *See* Dkt. No. 1 at 32-33.

[3] Nature's Path asks the Court to take judicial notice of Exhibit A, which is the label for its Hemp Hearts Granola product, and Exhibits B and C which are both FDA guidance documents.  *See* Dkt. No. 19.  The Court grants Nature's Path's request as to Exhibits B and C because they are publicly available guidance documents from a federal agency whose authenticity is uncontested.  *See*

The Court will refer to this third claim as the "added ingredient disclaimer" claim.

Based on these facts, Plaintiffs filed suit against Nature's Path on behalf of themselves and others similarly situated and alleged the following five state law causes of action: (i) violation of the Consumers Legal Remedies Act (the CLRA), California Civil Code § 1750, et seq; (ii) false advertising under Business & Professions Code § 17500 (FAL); (iii) common law fraud, deceit, and/or misrepresentation; (iv) unlawful, unfair, and fraudulent trade practices in violation of Business & Professions Code § 17200 (UCL); and (v) unjust enrichment. *Id.* ¶¶ 85-129.

## II.  LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims

---

*Wilson v. Frito-Lay N. Am., Inc.*, 260 F. Supp. 3d 1202, 1207 (N.D. Cal. 2017) ("Courts routinely take judicial notice of similar FDA guidance documents, many of which also appear on the FDA's public website."). However, because Plaintiffs contest the authenticity of Exhibit A, and because the Court must draw all inferences in Plaintiffs' favor at this stage of the case, the Court declines to take judicial notice of Exhibit A.

4

that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). The Ninth Circuit has interpreted Rule 9(b) to require that allegations of fraud are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading." *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin,* 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Finally, a defendant may also move for dismissal on grounds that the court lacks subject matter jurisdiction over the action. Fed. R. Civ. P. 12(b)(1). It is the plaintiff's burden to establish subject matter jurisdiction. *See Ass'n of Am. Med. Colls. v. U.S.*, 217 F.3d 770, 778-79 (9th Cir. 2000); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376-78 (1994).

### III.     DISCUSSION

Nature's Path moves to dismiss the Complaint on three primary grounds. It first contends that this Court lacks subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) because Plaintiffs do not have standing to sue. *See* Mot. at 2. It then argues that Plaintiffs' state law claims are preempted by FDA regulations. *Id.* And third, Nature's Path argues that the Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) and fails to plead claims grounded in fraud with sufficient particularity under Fed. R. Civ. P. 9(b). For the reasons explained below, the Court **GRANTS IN PART and DENIES IN PART** Nature's Path's motion.

#### A.     Standing

Nature's Path first challenges Plaintiffs' standing to pursue their side label claim and argues that Plaintiffs lack standing to pursue injunctive relief for any claim. Mot. at 19-20. The

1  Court finds that Plaintiffs have plausibly alleged that they have standing to pursue injunctive relief
2  but not the side label claim.

### i. Side Label Claim

Article III of the U.S. Constitution authorizes the judiciary to hear "cases" and "controversies." The doctrine of standing, in turn, is an "essential and unchanging part" of the case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). To have standing, a plaintiff must show that her injury-in-fact is (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S. Ct. 2743 (2010). And to plead standing under the FAL, CLRA, or UCL, a plaintiff must also allege that they relied on the defendant's purported misrepresentations and suffered economic injury as a result. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).

Nature's Path challenges Plaintiffs' standing to pursue their side label claim, which alleges that the Products fail to provide the required "percent daily value" of protein content in the nutrition facts panel, as required by FDA regulations. *See* Compl. ¶ 43; 21 C.F.R. § 101.9(c)(7)(i). The linchpin of Nature's Path's argument is that the Complaint does not allege that Plaintiffs ever reviewed the nutrition facts labels before buying the Products and therefore fails to allege that they relied on the absence of the "percent daily value" figure to their detriment. *See* Mot. at 19. In response, Plaintiffs argue that they have standing because Nature's Path's omission of the percent daily value figure in the nutrition facts panel left them with "no means of assessing the products' true protein content." *See* Opp. at 21.

The Court agrees with Nature's Path that Plaintiffs have a reliance problem. According to the Complaint, each of the Plaintiffs bought the Products "after reading and relying on the truthfulness of Defendant's product label that promised the Products contained a specified amount of protein per serving on the front of the product package." *See* Compl. ¶¶ 59, 65, 71 (emphasis added). What is missing are facts allowing the Court to reasonably infer that Plaintiffs made their purchasing decisions based on anything other than the Products' front labels. *See, e.g.*, *Pardini v. Unilever United States, Inc.*, 961 F. Supp. 2d 1048, 1060 (N.D. Cal. 2013) ("Plaintiff has not pled

that she ever looked at the nutrition panel. As such, it is implausible that she was deceived by its lack of disclosures."); *Durnford v. Musclepharm Corp.*, No. 15-CV-00413-HSG, 2015 WL 9258079, at *6 (N.D. Cal. Dec. 18, 2015) (finding that the plaintiff had not adequately alleged reliance because he did not plead that he had read and relied on the allegedly misleading representation), *aff'd in relevant part and rev'd in part*, 907 F.3d 595 (9th Cir. 2018); *Delacruz v. Cytosport, Inc.*, No. C 11-3532 CW, 2012 WL 1215243, at *9 (N.D. Cal. Apr. 11, 2012) (dismissing claims based on misrepresentations made on the defendant's website because the plaintiff did "not plead that she read or relied on any statements on the website").

The Court does not mean to imply that Plaintiffs could not possibly have been deceived by Nature's Path's alleged omission of the percent daily value figures. Plaintiffs' side label claim is not so factually implausible that dismissal is necessarily warranted on the pleadings.[4] But to have standing to pursue this claim, Plaintiffs must plausibly allege that they themselves were deceived by the omission. They have not done so. The Court accordingly **DISMISSES** Plaintiffs' claims as they relate to their side label claim but with leave to amend.

### ii.  Injunctive Relief

Nature's Path also argues that Plaintiffs lack standing to pursue injunctive relief. *See* Mot. at 20. The Court disagrees.

To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted). So once a plaintiff has been wronged, they are entitled to injunctive relief only if they can show that they face a "real or immediate threat that [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) (citations and internal punctuation omitted).

In the context of false advertising cases, the Ninth Circuit has explained that a plaintiff may establish the risk of future harm in two ways: (1) the consumer's plausible allegations that

---

[4] That said, the Court acknowledges that other courts in this district have recently dismissed this exact claim on implied preemption grounds. *Chong v. Kind LLC*, No. 21-CV-04528-RS, 2022 WL 464149, at *4 (N.D. Cal. Feb. 15, 2022).

7

they will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although they would like to; or (2) the consumer's plausible allegations that they might purchase the product in the future, despite the fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the product was improved. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

Plaintiffs' Complaint satisfies *Davidson*'s requirements. It alleges that Plaintiffs: (1) continue to desire to purchase Nature's Path products; (2) would likely purchase the products again in the future if they were reformulated to contain the amount of protein represented on the labels; and (3) regularly visit stores where Nature's Path products are sold. Compl. ¶¶ 63, 69, 75. Plaintiffs also allege that, absent an injunction prohibiting Nature's Path from mislabeling, they will be "unable to rely on Defendant's labels when shopping for protein products in the future." *Id.* With these allegations, Plaintiffs have plausibly pled a threat of future harm by alleging that they will be unable to rely on the Product's advertising or labeling in the future, and so will not purchase the Products although they would like to. *Davidson*, 889 at 969-70.

Nature's Path disagrees and attempts to distinguish *Davidson* by pointing to *Broomfield v. Craft Brew All.*, No. 17-CV-01027, 2017 WL 3838453, at *11 (N.D. Cal. Sept. 1, 2017). The plaintiffs in that case alleged similar California state law consumer misrepresentation claims based on the defendant's statement that its beer was brewed in Hawaii, when it was actually brewed in the continental United States. *Id.* Importantly, the plaintiffs alleged that they would only buy the beer if it had in fact been brewed in Hawaii. *Id.* Judge Freeman understandably held that the plaintiffs failed to meet the redressability requirement because she could "not issue a mandatory injunction forcing [defendant] to alter its production process." *Id.* Analogizing to *Broomfield*, Nature's Path argues that the Complaint makes Plaintiffs' desire to buy the Products in the future contingent on Nature's Path changing the Products themselves, not their labels. *See* Mot. at 19.

The Complaint does contain an allegation that "[i]f the Products were reformulated to provide the grams of protein that are represented on the labels, [Plaintiffs] would likely purchase them again in the future." *See* Compl. ¶¶ 63, 69, 75. Obviously, the Court will not issue a mandatory injunction forcing Nature's Path to create new products with more protein. But as

Plaintiffs argue, an at least equally plausible reading of this allegation is that Plaintiffs simply seek to buy the Products *as advertised*. *See* Opp. at 23; *see also* Compl. ¶ 63 ("[Plaintiffs] will be unable to rely on Defendant's labels when shopping for protein products in the future absent an injunction that prohibits Defendant from labeling its products with the incorrect number of grams of protein that each serving contains."). This sufficiently alleges that Plaintiffs will not purchase the Products until they can rely on the Products' representations, which is the first example of future harm noted in *Davidson*. The Court accordingly finds that Plaintiffs have standing to seek injunctive relief and **DENIES** Defendant's motion to dismiss the claims for such relief.[5]

### B. Express Preemption

Nature's Path also contends that Plaintiffs' state consumer protection and tort law claims are preempted by federal regulation. *See* Mot. at 6-9. Because the FDCA preempts state causes of action that are "not identical to" federal requirements, the central legal question here is whether Plaintiffs' state law claims would force Nature's Path to abide by requirements that are not imposed by FDA regulations. 21 U.S.C. § 343-1(a)(5); *see Hawkins v. Kroger Co.*, 906 F.3d 763, 769–70 (9th Cir. 2018). Only Plaintiffs' front label claims are arguably expressly preempted.[6]

Those claims allege that the Products' protein content claims on the front of the packages are misleading under California state law because they: (1) advertise a specific amount of protein per serving when, in fact, "amino acid content testing" reveals that they contain less; and (2) are

---

[5] Relatedly, Nature's Path also argues that, under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), Plaintiffs cannot pursue their equitable claims because they have an adequate remedy at law under multiple causes of action, as proven by their demand for monetary damages. *See* Mot. at 21-23. The Court is unpersuaded that *Sonner* compels dismissal of Plaintiffs' equitable claims at the pleading stage. Putting aside *Sonner*'s unique procedural posture, the case did not purport to disturb the well-established rule that equitable and damages claims may coexist when they are based on different theories. *See Elgindy v. AGA Serv. Co.*, No. 20-CV-06304, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021). Here, the Complaint alleges sufficient facts from which the Court can reasonably infer that Nature's Path's conduct exposes Plaintiffs to prospective injuries for which remedies at law would be inadequate. *See* Compl. ¶¶ 63, 69, 75.

[6] Both Plaintiffs' side label claim and ingredient disclaimer claim are clearly not expressly preempted by FDA regulations because they are explicitly based on violations of specific FDA regulations. *See* 21 C.F.R. §§ 101.9(c)(7)(i); 101.9(h)(4). They therefore do not seek to impose requirements that differ from those in the applicable federal law.

not adjusted for digestibility. Compl. ¶¶ 20, 42, 49. But because the FDA does not require Nature's Path to calculate protein content claims by using either of those methods, the Court finds that Plaintiffs' front label claims are preempted by FDA regulations.

The FDA regulations themselves do not specify how manufacturers must calculate the amount of protein in the protein content claim itself. The relevant regulation simply provides that nutrient content claims, such as the Products' front label protein statements, cannot "implicitly characterize the level of the nutrient in the food" and cannot be "false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). But in agency guidance from early 2022, the FDA clarified that protein content claims may be based on "either of the methods mentioned" in section 101.9(c)(7)—that is, the "nitrogen method" or the "protein digestibility-corrected" figure. *Industry Resources on the Changes to the Nutrition Facts Label*, U.S. Food & Drug Administration (content current as of Mar. 3, 2022), https://www.fda.gov/food/food-labeling-nutrition/industry-resources-changes-nutrition-facts-label.[7]

In light of the FDA's guidance, the Court finds that the Complaint does not allege that Nature's Path used an improper methodology to calculate its front label protein content claims. This is because the FDA has now made clear that its regulations do not require protein content claims to adjust for digestibility or to be calculated using amino acid contest testing. *See Nacarino*, 2022 WL 390815 at *5 ("Given the FDA's express approval of the nitrogen-content method and failure to require manufacturers to adjust for protein quality when stating the amount of protein in the nutrition label, it does not make sense to read the regulations as barring manufacturers from making identical statements elsewhere on their packaging."); *Chong*, 2022 WL 464149 at *3 ("[A] correct reading of the regulations establishes that producers may state grams of protein even outside the Nutrition Facts panel calculated by the nitrogen method, and without adjustment for digestibility."). Plaintiffs' front label claim would therefore use California state law to impose requirements that the FDA does not. And that would violate the FDCA's

---

[7] Whether or not the FDA's interpretation of its regulations warrants deference, the Court finds the guidance persuasive in explaining the relationship between § 101.13(i)(3) and § 101.9(c)(7). *See Nacarino*, 2022 WL 390815 at *4.

preemption provision. 21 U.S.C. § 343-1(a)(5); *see also Mee v. IA Nutrition, Inc.*, No. 14-CV-5006-MMC, 2015 WL 2251303, at *4 (N.D. Cal. May 13, 2015) ("[W]here, as here, an FDA regulation provides that the question of compliance must be determined using the method specified therein, a state law claim that seeks to establish a violation of such regulation by a different methodology is preempted"); *Durnford*, 2015 WL 9258079, at *4 (finding protein content claims preempted where plaintiff did not allege that the "scientific testing" they used to test the products at issue complied with the testing methods mandated by the FDA).

Plaintiffs' front label claim is accordingly preempted, and Nature's Path's motion is granted as to that claim. Because the defect lies in the legal theory, not the factual allegations, the dismissal is without leave to amend.

### C. Plausibility and Particularity Under Rules 8 and 9

#### i. Rule 8 Plausibility

Plaintiffs' only remaining claim is the "added ingredient disclaimer" claim, which alleges that the Products fail to prominently display "the type and quantity of the other ingredients to be added to the product by the user" on the front the label, as required by 21 C.F.R. § 101.9(h)(4). Compl. ¶ 44. Nature's Path appears to argue that this claim fails under Fed. R. Civ. P. 12(b)(6) because the Complaint concedes that the challenged labels state the required disclaimers immediately below the front label protein statement. *See* Mot. at 15. The Court finds the claim adequately pled at this stage.

1   The Complaint includes an image of one of the challenged product labels, which is
2   reproduced below:



Compl. ¶ 19.

Both the Complaint and the applicable regulation concern how *prominently* the added ingredient disclaimers are displayed. *See* Compl. ¶ 44 ("Defendant also violated 21 C.F.R. § 101.9(h)(4) because it failed to *prominently* display "the type and quantity of the other ingredients to be added to the product by the user and the specific method of cooking and other preparation" on the front the label.") (emphasis in original); 21 C.F.R. § 101.9(h)(4) ("Provided, that, the type and quantity of the other ingredients to be added to the product by the user and the specific method of cooking and other preparation *shall be specified prominently* on the label.") (emphasis added). As an example, Plaintiffs allege that the disclaimers are "in very small, barely legible font[.]" Compl. ¶ 44. Of course, how prominently the disclaimers are displayed is a question of fact. So because the Court is required to "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," the Court does not find that Plaintiffs' added ingredients claim is implausible as a matter of law. *Manzarek*, 519 F.3d at 1031.

1   Nature's Path's motion to dismiss on this basis is denied.

### ii. Rule 9 Particularity

To the extent that Nature's Path also argues that Plaintiffs' ingredient disclaimer claim fails to meet the requirements of Rule 9, the Court is similarly unpersuaded.

Rule 9(b) requires a complaint must allege the "who, what, when, where, and how" of the misrepresentations. *Vess*, 317 F.3d at 1106. The Complaint does this by alleging that Nature's Path (who) misrepresented the amount of protein in its products (what) to consumers when they purchased the Products (when and where) because the labels fail to prominently display "the type and quantity of the other ingredients to be added to the product by the user" to make the protein content claim accurate (how). Opp. at 19. In so doing, the Complaint gives Nature's Path ample notice of the nature of the misconduct which is alleged to constitute the fraud claimed. *See Neubronner*, 6 F.3d at 671. And although Nature's Path argues that the Complaint fails to allege facts showing that it knew or was aware of the falsity of the statements on the labels at the time of the sales, Rule 9(b) makes clear that knowledge "may be alleged generally." *See* Fed. R. Civ. P. 9(b). The Complaint also satisfies this requirement by alleging that Nature's Path "knew and intended that consumers would purchase, and pay a premium for, products labeled as having more protein over comparable products that do not contain misleading protein representations on the product labels." *See* Compl. ¶ 52. Nature's Path's motion to dismiss on Rule 9(b) grounds is denied.

## IV. CONCLUSION

For the reasons noted above, the Court **GRANTS IN PART and DENIES IN PART** Nature's Path's motion. Specifically, the Court **DISMISSES** Plaintiffs' front label claims without leave to amend and their side label claim with leave to amend. Plaintiffs may file an amended complaint within twenty-one (21) days of the filing of this Order.

Further, the Court **SETS** a telephonic case management conference on April 5, 2022, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In: 888-808-6929;

Passcode: 6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines. Given the length of time since the parties filed Docket No. 29, the parties may supplement their statement with any new information no more than one week before the case management conference.

**IT IS SO ORDERED.**

Dated: 3/10/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge