UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOLLY BROWN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NATURE'S PATH FOODS, INC.,<br><br>    Defendant. | Case No. 21-cv-05132-HSG<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 57 |

Nature's Path Foods, Inc. ("Defendant") has filed a second motion to dismiss. Dkt. No. 57 ("Mot."). Briefing is complete. *See* Dkt. Nos. 58 ("Opp."), 59 ("Reply").[1] While the motion was pending, Plaintiffs filed a Second Amended Complaint. Dkt. No. 68 ("SAC"). The parties then submitted supplemental briefing. *See* Dkt. Nos. 70 ("Pls. Supp."), 71 ("Def. Supp."). The Court held a hearing, *see* Dkt. No. 77 (Hearing Transcript), and now **DENIES** the motion.

**I.   BACKGROUND**

Molly Brown, Parsa Miller, and Lauren Morgan are consumers in California who allege that they were deceived into buying Defendant's breakfast and snack products (the "Products") based on the statements Defendant makes on its packaging about the amount of protein in those products. *See* SAC ¶¶ 1–8, 61–76. The Court granted in part and dismissed in part Defendant's motion to dismiss Plaintiffs' original complaint. *See generally* Dkt. No. 50 ("Order").[2] Plaintiffs then filed a First Amended Complaint and Defendant again moved to dismiss. *See generally* Dkt.

---

[1] Defendant asks the Court to take judicial notice of the label of Nature's Path Hemp Hearts Granola. *See* Dkt. No. 57-3. Plaintiffs oppose the request. *See* Opp. at 9 n.3. Plaintiffs already include excerpts of the labels at issue in their SAC, *see* SAC ¶¶ 20-21, so the Court declines to take judicial notice of the proffered additional version of the product packaging.
[2] The Court explained the applicable regulatory framework in its previous order. *See* Order at 2-3.

1  No. 53 ("FAC"); Mot.  Plaintiffs then filed the SAC, which alleges the following five causes of
2  action on behalf of themselves and others similarly situated: 1) Violation of the Consumers Legal
3  Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*; 2) False Advertising, Business
4  & Professions Code § 17500, *et seq.* ("FAL"); 3) Common Law Fraud, Deceit, and/or
5  Misrepresentation; 4) Unlawful, Unfair, and Fraudulent Trade Practices Violation of Business &
6  Professions Code § 17200 ("UCL"); and 5) Unjust Enrichment.  *See* SAC  ¶¶ 85-130.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim.  *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nevertheless,

courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988. And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his ... claim." *Weisbuch v. Cty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation omitted).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

## III. DISCUSSION

Defendant moves to dismiss the SAC on several grounds. First, Defendant contends that Plaintiffs lack standing to: (1) pursue their claims because they fail to allege plausible reliance; (2) seek injunctive relief; and (3) assert claims for products they did not purchase. *See* Mot. at 1-3. Second, Defendant argues that Plaintiffs' DV% and "Protein Per Serving with Milk" claims are preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001). *Id.* at 3. Third, Defendant argues that Plaintiffs' theories of deception are implausible and do not state a claim under the reasonable consumer test. *Id.*

### A. Standing

Article III of the U.S. Constitution authorizes the judiciary to hear "cases" and "controversies." The doctrine of standing, in turn, is an "essential and unchanging part" of the case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a plaintiff must show that her injury-in-fact is (1) concrete, particularized, and actual or imminent; (2) fairly traceable to the challenged action; and (3) redressable by a favorable ruling. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010). And to plead standing under the FAL, CLRA, or UCL, a plaintiff must also allege that they relied on the defendant's purported

3

misrepresentations and suffered economic injury as a result. *See Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 326 (2011).

### i. Implausible Reliance

#### a. DV% Claim

Defendant argues that Plaintiffs lack standing to pursue claims based on the alleged omission of DV% from the Nutrition Facts Panel ("side label" or "NFP"). *See* Def. Supp. at 6-8. In its previous order, the Court explained that to have standing to pursue the side label claim, Plaintiffs needed to "plausibly allege that they themselves were deceived by the omission." Order at 7. In the FAC, Plaintiffs alleged that they "regularly check[] the NFP before purchasing any product." FAC ¶¶ 59, 64, 69. Defendant challenged this allegation as insufficient in their motion, *see* Mot. 8-9, and in response, Plaintiffs now allege in the SAC that they "looked at and read the NFP on the Hemp Hearts Granola before purchasing it for the first time," *see* SAC ¶¶ 63, 68, 73.

Defendant contends that by making this allegation, Plaintiffs have now undermined their entire theory of reliance. Defendant argues that "the Nutrition Facts Panel has two separate columns that make clear the granola only contains 6g of protein, not 10g. Plaintiffs' beliefs that the granola contained 10g of usable protein is therefore implausible . . ." Def. Supp. at 8 (emphasis omitted). Defendant also argues that Plaintiffs "do not allege with specificity what they read and relied on . . . and what they understood about the amount of protein" in the product. *Id.* at 6 (emphasis omitted). Plaintiffs respond that the "SAC's new allegations state a plausible claim as to the front label and include the exact reliance allegation Nature's Path claimed was missing from the prior iteration." Pls. Supp. at 5.

The Court finds that Plaintiffs now "plausibly allege that they themselves were deceived by the omission." *See* Order at 7. Further, while establishing the ultimate persuasiveness of this claim on the merits may be an uphill battle under the circumstances, the Court cannot conclude at this stage that the fact that Plaintiffs looked at the two-column side label makes their reliance allegations inherently implausible as a matter of law.

#### b. With Milk Claim

Defendant also argues that because "the Nutrition Facts Panel's columns identify protein

4

1    quantity with and without '½ cup skim milk' added . . . Plaintiffs cannot allege that that they read
2    and relied on the granola's Nutrition Fact Panel, yet somehow concluded that the granola had 10g
3    of protein." Def. Supp. at 9 (citations omitted). Defendant contends that "[t]o allow such a claim
4    would permit Plaintiffs to selectively ignore multiple portions of the label that they claim to have
5    read and relied on: the 'WITH MILK' on the front label, and the entire right-hand column on the
6    Nutrition Facts Panel." *Id.* (citation omitted).

7    Again, setting the persuasiveness of Plaintiffs' ultimate merits position to the side, the
8    Court cannot conclude given the alleged layout of the various representations that the fact that the
9    front label specifies a "with milk" protein amount or the fact that the NFP has two columns—one
10   which specifies the protein content of the product with milk and another which specifies the
11   protein content of the product without milk—renders Plaintiffs' reliance allegations inherently
12   implausible as a matter of law on a motion to dismiss.

13   Accordingly, the Court **DENIES** Defendant's motion to dismiss as to the DV% and "with
14   milk" claims.

### ii. Injunctive Relief

16   Defendant argues that Plaintiffs lack standing to seek injunctive relief "prohibit[ing]
17   Defendant from labeling its products with the incorrect number of grams of protein that each
18   serving contains," SAC ¶¶ 65, 70, 75, "because they cannot demonstrate redressability, or the
19   likelihood that the requested relief will address the alleged injury," Mot. at 17-18; *see also* Def.
20   Supp. at 4. The Court disagrees.

21   To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a
22   real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*,
23   631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted). So once a plaintiff has been wronged, they
24   are entitled to injunctive relief only if they can show that they face a "real or immediate threat that
25   [they] will again be wronged in a similar way." *Mayfield v. United States*, 599 F.3d 964, 970 (9th
26   Cir. 2010) (citations and internal punctuation omitted). In the context of false advertising cases,
27   the Ninth Circuit has explained that a plaintiff may establish the risk of future harm in two ways:
28   (1) the consumer's plausible allegations that they will be unable to rely on the product's

5

advertising or labeling in the future, and so will not purchase the product although they would like to; or (2) the consumer's plausible allegations that they might purchase the product in the future, despite the fact it was once marred by false labeling because they may reasonably, but incorrectly, assume the product was improved. *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018).

As the Court held in its previous order, Plaintiffs' claims in their initial complaint satisfied *Davidson*'s requirements. Order at 7–9. The Court finds that the SAC likewise meets *Davidson*'s requirements, *see* SAC ¶¶ 65, 70, 75, and adopts its prior reasoning and conclusion in their entirety here.

Defendant now also argues that Plaintiffs' desired injunction prohibiting Defendant from labeling its products with the allegedly incorrect number of grams of protein that each serving contains "cannot address Plaintiffs' alleged injuries, which now relate only to the DV% Claim and Protein Per Serving With Milk Claim." Mot. at 18. Defendant further argues that Plaintiffs concede this point because they do not address it in their opposition. *See* Reply at 14. But when Plaintiffs' allegations are viewed in the light most favorable to them—as they must be at this stage—Plaintiffs are requesting that Defendant include the DV%, which would tell them how much protein the product actually provides. *See e.g.* SAC ¶ 64 ("Without the statement of the corrected amount of protein per serving in the form of a %DV, the only information plaintiff had about the Products was the 10 gram protein quantity claim, and she believed she was receiving the full amount of that quantity in a form her body could use. Because the Products did not provide any statement of the corrected amount of protein per serving, she did not have any reason to believe that the Products provided less protein than the amount represented in the NFP and on the front of the label."). The Court accordingly finds that Plaintiffs have standing to seek injunctive relief and **DENIES** Defendant's motion to dismiss the claims for such relief on this basis.

### iii. Products Not Purchased

Defendant seeks dismissal of all claims based upon Unpurchased Products for lack of standing. Mot. at 18–21. In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *In re S.C. Johnson & Son, Inc.*

6

1    *Windex Non-Toxic Litig.*, 20-CV-03184-HSG, 2021 WL 3191733, at *2 (N.D. Cal. July 28, 2021)

2    (citing *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012)).

3    Although some district courts reserve the issue until a motion for class certification, "[t]he

4    majority of the courts that have carefully analyzed the question hold that a plaintiff may have

5    standing to assert claims for unnamed class members based on products he or she did not purchase

6    so long as the products and alleged misrepresentations are substantially similar." *Miller*, 912 F.

7    Supp. 2d 861 at 869; *see also Papasan v. Dometic Corp.*, 2017 WL 4865602, at *8 (N.D. Cal

8    2017); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at

9    *12–13 (N.D. Cal. Oct. 2, 2013). If the products are sufficiently similar, "any concerns regarding

10   material differences in the products can be addressed at the class certification stage." *Anderson v.

11   Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). However, "[w]here the alleged

12   misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent

13   they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

14   Courts have found substantial similarity for purposes of standing where: (1) the products

15   are physically similar; (2) the differences between the products are immaterial because the legal

16   claim and injury to the customer is the same; and (3) both the products and the legal claims and

17   injury are similar. *See Ang v. Bimbo Bakeries USA, Inc.*, No. 13-CV-01196-WHO, 2014 WL

18   1024182, at *4–8 (N.D. Cal. Mar. 13, 2014). The Court agrees with Judge Orrick of this district

19   that "the best approach is one which focuses on whether the type of claim and consumer injury is

20   substantially similar as between the purchased and unpurchased products." *Id.* at *8. "That

21   determination necessarily focuses on whether the resolution of the asserted claims will be identical

22   between the purchased and unpurchased products." *Id.*

23   Defendant contends that Plaintiffs have not established substantial similarity because the

24   FAC is silent with respect to any facts about the similarity of the products or their labels, with the

25   exception of conclusory allegations. Mot. at 20–21. Defendant also argues that ultimately, the

26   amount of protein in each of the Products and the ingredients from which that protein is derived

27   varies on a product-by-product basis. *Id.* (citations omitted); *see also Rugg v. Johnson & Johnson*,

28   No. 17-cv-05010- BLF, 2019 WL 119971, at *2 (N.D. Cal. Jan. 7, 2019) (dismissing claims based

1  on unpurchased products where those claims were based on "the presence of widely varying"
2  ingredients).
3        The Court disagrees and finds that Plaintiffs satisfy the substantial similarity test. As
4  Plaintiffs point out, "they allege the same UCL unlawful prong claims with respect to all
5  products" based on "a failure to include a statement of the corrected amount of protein in the
6  NFP." Opp. at 21-22; *see also* SAC ¶¶ 112-25. Plaintiffs also "allege that all products were
7  identical in every respect that is important to these two claims—i.e., that all products made a
8  protein claim on the front label, and that all failed to provide a statement of the corrected amount
9  of protein in the NFP." Opp. at 22; SAC ¶¶ 19–23. Further, "Plaintiffs' misleading prong claims
10 based on the failure to include the %DV are also substantially similar across all products" and
11 "Plaintiffs allege that none of the products consisted of high-quality proteins that provide the full
12 amount of protein claimed and that the inclusion of a %DV would have revealed these material
13 facts to consumers." Opp. at 22.; *see also* SAC ¶¶ 19–23. Finally, "even though the 'added
14 ingredient' claims apply to only a limited subset of products, Plaintiffs have alleged that all of
15 those products failed to prominently display the added ingredient disclaimer." Opp. at 22; *see also*
16 SAC ¶ 115. Accordingly, resolving "the asserted claims will be identical between the purchased
17 and unpurchased products" as to each claim at issue in the case. *Ang*, 2014 WL 1024182, at 8.
18 The Court finds that Plaintiffs have sufficiently alleged that the unpurchased Products are
19 substantially similar to the purchased Products and **DENIES** the motion on this basis.

    **B.**    **Implied Preemption**

21   Defendant argues that Plaintiffs' "side label" and "added ingredient" claims are impliedly
22 preempted under *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341, 353 (2001), because
23 they "exist solely by virtue of the FDCA." Def. Supp. at 4; *see also* Mot. at 3, 16-17; Reply at 13.
24 However, Judge Orrick has recently rejected this same argument, and the Court finds his reasoning
25 persuasive and adopts it here. *See Brown v. Van's Int'l Foods, Inc.*, No. 22-CV-00001-WHO,
26 2022 WL 1471454, at *6-8 (N.D. Cal. May 10, 2022); *see also Starratt v. Fermented Scis*., Inc.,
27 No. 22-CV-03895-HSG, 2023 WL 359500, at *4 (N.D. Cal. Jan. 23, 2023).
28       The Court **DENIES** Defendant's motion on this issue because Plaintiff's claims are not

United States District Court
Northern District of California

subject to implied preemption.

## C. Lack of Plausible Deception

Defendant argues that Plaintiffs' allegations no longer pass the reasonable consumer test because they do not plausibly allege that Defendant's Products' labels would deceive a reasonable consumer. Mot. at 3. To state a claim under the UCL, FAL, and CLRA, a plaintiff must plead that "members of the public are likely to be deceived" by a defendant's advertisements. *See Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). "'Likely to deceive' implies more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Cal. Ct. App. 2003). Rather, the test is whether "it is probable that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.* "California courts ... have recognized that whether a business practice is deceptive will usually be a question of fact." *Williams*, 552 F.3d at 938. It is thus a "rare situation" when "granting a motion to dismiss [a UCL, CLRA, or FAL claim] is appropriate." *Id.* at 939.

### i. %DV Deception

Defendant first argues that Plaintiffs' FAC did not pass the "reasonable consumer test" because no reasonable consumer would understand how a %DV for protein is calculated, so Plaintiffs' claims of deception stemming from the omission of the %DV for protein are implausible. Mot. at 12-13; Reply at 9-11. Defendant also argues that even if reasonable consumers have some understanding of how to calculate %DV, they are unlikely to think plant-based foods have the same amount of usable protein as meat products. Def. Supp at 9 n.6. Now, responding to the new facts alleged in Plaintiff's SAC that state that Plaintiffs read and relied on the NFP leading to their deception, Defendant argues that Plaintiffs' argument fails because the NFP clearly states that the granola alone has 6g of protein, and 10g "with ½ cup of skim milk" added. Def. Supp at 2; *see also* SAC ¶ 21.[3] Therefore, Defendants contend, if Plaintiffs did in

---

[3] The NFP contains two columns: (1) the left-side column is labeled "per ¾ cup cereal" and provides the nutritional value for the Hemp Hearts Granola itself, with a stated protein amount of

9

1  fact read and rely on the NFP, they would have seen that the granola did not contain 10g of usable
2  protein but actually only included 6g, and a reasonable consumer could not have been misled to
3  believe that the granola by itself contained 10g of protein.  Def. Supp at 2.

4  Once again, setting the ultimate strength of Plaintiffs' claim on the merits to the side, the
5  Court finds that dismissal is not warranted.  Plaintiffs allege that the absence of any statement of
6  the corrected amount of protein per serving in the NFP (expressed as %DV) deceived and misled
7  reasonable consumers into believing that one serving of the Products would provide the grams of
8  protein represented on the front label.  SAC ¶ 22–23.  Accordingly, the Court finds that at this
9  stage Plaintiffs have plausibly alleged that Defendant's labels could deceive a reasonable
10 consumer.  *See Rausch v. Flatout, Inc*., No. 22-CV-04157-VC, 2023 WL 2401452, at *5-6 (N.D.
11 Cal. Mar. 8, 2023).

### ii. "Added Ingredient Declaimer" Deception

13 Defendant also argues that Plaintiffs fail to allege that reasonable consumers are likely to
14 be misled by "PROTEIN PER SERVING WITH MILK" statement because "WITH MILK"
15 appears immediately underneath "10g" in all caps (and therefore cannot be missed), and the
16 inclusion of milk is disclosed in the NFP.  *See* Mot. at 13–15; Reply at 11–13; Def. Supp. at 10.
17 Defendant points out that Plaintiffs now allege that in addition to looking at the front they also
18 looked at the side panel NFP, which shows that the 10g protein per serving is with milk.  *See* Def.
19 Supp. at 10; *see also* SAC ¶ 63, 68, 73.  Thus, Defendant argues, Plaintiffs' claims of injury
20 stemming from the alleged "inconspicuousness" of the "WITH MILK" portion of "10g PROTEIN
21 PER SERVING WITH MILK" on the front label are implausible as a matter of law.  *See* Def.
22 Supp. at 10.

23 The Court again disagrees given the leniency of the pleading standard. Plaintiffs argue that
24 the "10g PROTEIN PER SERVING WITH MILK" statement on the front of the box deceived
25 consumers because "WITH MILK" was insufficiently prominent.  *See, e.g.,* SAC ¶¶ 48, 67, 72.

---

"6g"; and (2) the right-side column is labeled "per ¾ cup cereal with ½ cup skim milk" and provides the nutritional value for the granola with milk, with a stated protein amount of "10g." *See* SAC ¶ 21.

10

As the Court found in the first motion to dismiss order, prominence is an issue of fact. Order at 12. The Court finds that at this stage Plaintiffs have plausibly alleged that Defendant's labels could deceive a reasonable consumer. This is not the "rare situation" in which "granting a motion to dismiss [a UCL, CLRA, or FAL claim] is appropriate." *Williams*, 552 F.3d at 939.

The Court accordingly **DENIES** Defendant's motion to dismiss the claims based on a failure to allege plausible deception.

## IV. CONCLUSION

The Court **DENIES** Defendant's the motion. The Court further **SETS** a telephonic case management conference on April 18, 2023, at 2:00 p.m. The Court further **DIRECTS** the parties to submit a joint case management statement by April 11, 2023. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

All attorneys and pro se litigants appearing for a telephonic case management conference are required to dial in at least 15 minutes before the hearing to check in with the courtroom deputy. For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.

**IT IS SO ORDERED.**

Dated:   3/29/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge