UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| MOLLY BROWN, et al., | Case No. 21-cv-05132-HSG (LB) |
| Plaintiffs, | **DISCOVERY ORDER** |
| v. | Re: ECF No. 116 |
| NATURE'S PATH FOODS, INC., | |
| Defendant. | |

## INTRODUCTION

In this putative class action, the plaintiffs contend that the defendant made false statements on food-product labels about the protein content of the products, in violation of California consumer-protection statutes.[1] The parties dispute whether the plaintiffs are entitled to discovery about protein testing conducted by the defendant and related communications.[2] The court mostly orders the discovery.

---

[1] Third Am. Compl. – ECF No. 113. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Disc. Letter Br. – ECF No. 116.

ORDER – No. 21-cv-05132-HSG (LB)

STATEMENT

**1. Factual and Procedural Background**

The defendant "prominently labels its Nature's Path products as providing specific amounts of protein per serving depending on the product." For example, the front label of its "Hemp Hearts Granola" product says "10g Protein."[3] But "a simple statement about the number of grams [of protein] does not actually inform consumers about how much usable protein they are receiving." This is because different proteins are of different "quality," meaning that their digestibility (and thus their "ability to support human nutritional requirements") varies.[4] The Food and Drug Administration (FDA) therefore requires that when manufacturers represent an amount of protein on a product's front label, the label's "nutrition fact panel" must indicate the quality of that protein. The quality is expressed as a "percent daily value," which is the percentage of a person's recommended daily protein intake that the product actually provides (after taking into account its protein content's quality). To calculate the percent daily value, the manufacturer must first determine the protein content's "Protein Digestibility Corrected Amino Acid Score."[5]

The primary protein content in the defendant's products is oats. Oats have a digestibility score of "between 0.5 and 0.6," which means the "products will provide nutritionally as little as half of their total protein quantity." But the defendant's products do not include a percent daily value in their label's nutrition fact panels. The plaintiffs thus allege that "the protein claims on the front of the package . . . are unlawful in violation of parallel state and federal laws."[6] The plaintiffs also allege that because the product labels do not indicate protein quality, the front-label protein quantities are "likely to mislead reasonable consumers," who "reasonably expect that [the] products will actually provide nutritionally the full amount of protein per serving claimed."[7]

---

[3] Third Am. Compl. – ECF No. 113 at 2 (¶ 2).

[4] *Id.* (¶ 3).

[5] *Id.* at 2–3 (¶¶ 3–5).

[6] *Id.* at 4 (¶ 6).

[7] *Id.* (¶ 7).

The plaintiffs' initial complaint claimed that the defendant's labels are misleading because the defendant used an improper methodology to calculate the protein quantity on its front labels, and thus the quantity indicated should have been different — it should have been adjusted for digestibility. The trial court dismissed that claim with prejudice because it was preempted by the Food, Drug, and Cosmetic Act: it imposed nutrition-labeling requirements that are "not identical to" federal requirements, which do not require protein-quantity claims to be adjusted for digestibility.[8] 21 U.S.C. § 343-1(a)(5).

## 2. Discovery Dispute

Before the trial court dismissed that claim, the plaintiffs served the discovery requests at issue on the defendant.[9] The defendant characterizes the requests as falling into two categories, both of which are irrelevant and not proportional: (1) "discovery relating to how [the defendant] calculated and tested the front label statement of protein in its products" and (2) discovery relating to the defendants' calculating the percent daily value, including the protein content's "Protein Digestibility Corrected Amino Acid Score." The defendant contends that the first category is relevant only to the plaintiffs' dismissed claim, and the second category is irrelevant because the defendant "did not calculate the [percent daily value] for its products sold during the relevant time period." But the defendant offers to run certain search terms that would return documents where the term "protein" appears near other terms like "percent daily value" or "study."[10]

The plaintiffs argue that the discovery requests are relevant because "the testing used to derive the front label claims will explain what the front label figures actually mean" (which provides a basis to determine whether those figures are deceptive), "documents and discussions about protein testing go to [the d]efendant's knowledge of the deceptiveness of its protein claims," and "the [percent daily value] for protein is central to this case."[11]

---

[8] Order – ECF No. 50 at 9–11.

[9] Disc. Letter Br. – ECF No. 116 at 3.

[10] *Id.* at 3–5 & n.3; Disc. Reqs. – ECF No. 116-1.

[11] Disc. Letter Br. – ECF No. 116 at 1–2.

The trial court referred all discovery disputes in this case to the undersigned.[12] The court held a hearing on August 24, 2023.

## ANALYSIS

The parties are perhaps not very far apart as a practical matter. The court resolves the specific discovery requests in turn because they cabin what is really in dispute.

The requests for production are a good starting point because the parties propose specific search terms in their letter brief and their proposals are similar. The defendant is willing to search for documents where the term "protein" appears near such terms as "percent daily value," "analyz*," or "research." The plaintiffs propose essentially the same thing, except they offer alternate terms appearing near "protein," such as "test!" and "PDCAAS."[13] "PDCAAS" (the "Protein Digestibility Corrected Amino Acid Score") is a component of the percent-daily-value calculation, and "test!" in this context is essentially a synonym of "analyz*" and "research."

By offering these terms, the defendant effectively concedes that its internal protein testing is relevant to this case. The plaintiffs have a live claim that the defendant's labels are deceptive as a result of (1) the front-label protein-quantity claim differing substantially from the quantity of digestible protein provided by the products and (2) the product label lacking a clarifying indication of protein quality.[14] The plaintiffs are thus entitled to test, through discovery, whether and to what extent there is a difference between the front-label protein quantity and the actual protein quality, because that difference underpins the claim. The court therefore orders the document discovery requested by the plaintiffs.

The defendant contends that the requested discovery is relevant only to the plaintiffs' dismissed claim. But the trial court dismissed only the claim that the front-label protein quantities should themselves have been adjusted for digestibility. The live claim, on the other hand, is that the front-label protein quantities are deceptive in light of the lack of an indication of protein

---

[12] Order of Reference – ECF No. 98.

[13] Disc. Letter Br. – ECF No. 116 at 2, 5 n.3.

[14] Third Am. Compl. – ECF No. 113 at 4 (¶ 7).

quality elsewhere on the labels. This live claim requires an understanding of the actual protein quality — after all, the front-label protein quantity would not be deceptive if that entire quantity is digestible. Thus, the defendant's internal testing and related communications, which speak to the products' actual protein quality, are relevant.

Regarding the interrogatories (numbered four, six, and eight), the plaintiffs offer to drop the sixth.[15] The fourth and eighth appear to substantially overlap, but they are relevant for the same reasons as the requests for production.

As for the first through fifth requests for admission, the defendant has already denied them.[16] The plaintiffs ask for the requests to be admitted,[17] but the court has no reason to doubt the existing responses.

## CONCLUSION

The court orders most of the plaintiffs' requested discovery, as specified in this order. This resolves ECF No. 116.

**IT IS SO ORDERED.**

Dated: August 24, 2023

_____
LAUREL BEELER
United States Magistrate Judge

---

[15] Disc. Letter Br. – ECF No. 116 at 2.

[16] Reqs. for Admission – ECF No. 116-1 at 4–6.

[17] Disc. Letter Br. – ECF No. 116 at 2.